United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TIEN PHAM,

Petitioner,

v.

JAMES TILTON, Warden,

Respondent.

_______________________________________/

No. C 06-4133 PJH

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Before this court is a petition for writ of habeas corpus filed by state prisoner, Tien Pham ("Pham"), pursuant to Title 28, section 2254 of the United States Code. Pham seeks federal habeas relief on the ground that there was insufficient evidence to support the gang enhancement allegations and that a denial of his petition would be a violation of his due process rights under the Fourteenth Amendment. Having reviewed the parties' papers, the record, and having carefully considered their arguments and the relevant legal authorities, the court hereby DENIES Pham's petition.

## BACKGROUND

### I. Procedural History

On June 30, 2004, Pham and co-defendant Hoang Nhan Do Trinh ("Trinh") were each convicted of three counts of attempted murder, under California Penal Code section 187 and section 664, subdivision (a), following a bench trial before the Santa Clara Superior Court of California. As to each of the attempted murder counts, the trial court also found true the allegations of gang enhancement under California Penal Code section 186.22, subdivision (b)(1), the allegation that Pham had used a deadly and dangerous

weapon, as defined under California Penal Code section 12022, subdivision (b)(1), and the allegation that Pham had personally inflicted great bodily injury, as defined under California Penal Code section 12022.7, subdivision (a). On September 10, 2004, Pham was sentenced to state prison for a term of twenty-eight years and four months. This sentence included a ten-year term for the gang enhancement.

On appeal to the Sixth Appellate District for the Court of Appeal of the State of California, Pham challenged the sufficiency of the evidence to support the attempted murder counts and the gang enhancement allegations. The court of appeal affirmed Pham's convictions in an unpublished opinion filed on September 26, 2005. The California Supreme Court denied Pham's request for review on November 30, 2005.

On June 30, 2006, Pham filed a petition for writ of habeas corpus with this court, along with a motion for leave to proceed in forma pauperis. This court issued an order to show cause and denied Pham's request to proceed in forma pauperis on July 13, 2006. Respondent James Tilton filed an answer to the petition and notice of lodging of exhibits in support of his answer on September 25, 2006. Pham subsequently filed his traverse to the answer on November 3, 2006.

**II. Factual History**

On July 15, 2000, six friends, Tina Le ("Tina"), Tina's boyfriend Hung Nguyen ("Hung"), Trong Nguyen ("Trong"), Tuan Tran ("Tuan"), Tuan's girlfriend Lucy, and another male friend named Dai, went to a park to celebrate Hung's birthday.[1] Though Hung, Trong and Tuan all drank beer, Hung was the only one who was drunk.

Later that evening, the six friends went to Tinh Café in San Jose, California to continue the birthday celebration. The six friends sat together at one table, while Pham and Trinh sat at another table. Tina recognized Pham as her ex-boyfriend's friend. Though Tina had seen Pham and Trinh around, she did not know them. Hung noticed that Pham

[1] Because some of the victims share a last name, this court will refer to the parties by their first names. This court does so for ease of reference and clarity, not out of any disrespect for them. See U.S. v. Cabaccang, 481 F.3d 1176, 1179 n.1 (9th Cir. 2007).

and Trinh were staring at him in an unfriendly manner. As Hung and Tina walked by Pham and Trinh's table to exit the café, Hung said to Pham and Trinh, "What the fuck are you looking at?" Pham and Trinh did not reply.

While Hung was outside the café, Pham and Trinh ran up behind Hung and stabbed him, which caused him to faint. It is not known whether it was Pham or Trinh that stabbed Hung.

Pham and Trinh then attacked Trong. Trong tried to run away, but was unsuccessful. Pham and Trinh eventually caught Trong and proceeded to continue attacking him. Pham and Trinh stabbed him repeatedly in the chest, back, and head with knives. At least one knife had an eight-inch blade. As they stabbed him, Pham and Trinh said something to the effect of, "Are you trying to act tough?"

After witnessing Hung faint, Tina went back into the café and called for Tuan's help. Tuan ran outside and discovered that Trong was being attacked by Pham and Trinh. Tuan attempted to intervene by punching one of the attackers. Tuan was subsequently stabbed by both Pham and Trinh. The first attacker asked Tuan something to the effect of, "Do you think you are tough?" or "Do you think you are a tough guy?" Pham and Trinh then disengaged and fled the scene.

Hung, Trong, and Tuan sustained severe injuries as a result of the attack. Hung had been stabbed near his shoulder and was rendered unconscious. Trong was bleeding profusely from his head and other parts of his body. Trong was stabbed in his left arm, right temple, right shoulder, neck, left flank, and the middle of his back. The cut on his head was six centimeters long. One of the stab wounds to Trong's back was long and very deep. Trong was taken to a hospital where he required emergency surgery.

Tuan was also bleeding, suffering stab wounds to both of his arms, the back of his right shoulder, his left shoulder just below his neck, his right hip, his lower back and mid-back and an area below his armpit. Tuan's back wounds included a ten-inch long wound that went from his mid-back around to his chest and a seven-inch long wound to his lower

back. A stab wound to his right flank was more than six inches deep and lacerated his kidney. A deep stab wound to his back caused his lung to partially collapse. Due to the kidney laceration and lung collapse, Tuan was taken to a hospital where he required emergency surgery.

Pham and Trinh were later arrested. Pham told the police that Tina called him and Trinh "chickenshit" as she passed by their table at Tinh Café. Pham also told the police that Tina's friends were "mad-dogging"[2] him and looking for a fight. Pham admitted that he stabbed Hung in the upper right shoulder, but maintained that Hung or one of Hung's friends had thrown the first punch.

Subsequent to his arrest, Pham admitted, in an interview with the investigating gang detective, to both being a member of the "V12" gang ("V12"), also known as the "12 Zodiac" gang, and to being very close friends with V12's core members. (R.T. Exh. 1, 221; Exh. 2, 388.) He also told the police that V12 members liked to hang out at the Tinh Café, but did not specifically state that the July 2000 stabbings were connected or related to V12 or its activities.

Pham acknowledged that Dat Nguyen ("Dat") was a member of V12 and was currently incarcerated for a stabbing that occurred at a different Vietnamese café. Pham also acknowledged that Phat Vu ("Phat"), a member of V12, was currently in custody for fighting. In 1998, following a complaint of a weapons disturbance, Pham and Phat were arrested together. Pham was identified as armed with a stick while chasing others. (R.T. Exh. 2, 387.) Phat was a registered member of V12 and listed Pham as one of his associates on his gang registration form.

Trinh told the police that Tina and Hung had been staring at him inside Tinh Café. Though Trinh admitted to being involved in the altercation outside the café, he denied

[2] In the gang culture, "mad-dogging" means a "dirty look" or "stare" that is perceived to be a "challenge to fight." (R.T. Exh. 2, 406, 408.)

United States District Court
For the Northern District of California

stabbing anyone. Trinh was knowledgeable about V12, but denied being a member of the gang.

In contrast to the assailants, the victims, Hung, Trong, and Tuan were not gang members.

**STANDARD OF REVIEW**

The petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), so the provisions of that act apply. See Lindh v. Murphy, 521 U.S. 320, 327 (1997). Under AEDPA, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2007).

A state court decision is "contrary to" Supreme Court authority, falling within the first clause of section 2254, subdivision (d)(1) of Title 28 of the United States Code, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Clearly established Federal law" under section 2254, subdivision (d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). This "clearly established" law refers to the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state court decision. Id. at 71.

Under the "unreasonable application" clause of Section 2254, subdivision (d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing

United States District Court
For the Northern District of California

legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. Andrade, 538 U.S. at 75. However, this standard requires the state court decision to be more than incorrect or erroneous. Id. For the federal court to grant habeas relief, the state court's application of the Supreme Court authority must be objectively unreasonable. Id. The "objectively unreasonable" standard is different from the "clear error" standard in that "the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id.; see Clark v. Murphy, 331 F.3d 1062, 1068 (9th Cir. 2003). Therefore, it is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous. Rather, the federal habeas court must conclude that the state court's application of federal law was objectively unreasonable. Andrade, 538 U.S. at 76; Clark, 331 F.3d at 1068.

However, when the state court decision does not articulate the rationale for its determination or does not analyze the claim under federal constitutional law, a review of that court's application of clearly established federal law is not possible. See Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir. 2000); see also, 2 J. Liebman & R. Hertz, Federal Habeas Corpus Practice and Procedure § 32.2, at 1424-26 & nn.7-10 (4th ed. 2001). When confronted with such a decision, a federal court must conduct an independent review of the record and the relevant federal law to determine whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. Delgado, 223 F.3d at 982. As the Ninth Circuit further explained:

> When a state court does not furnish a basis for its reasoning, [federal courts] have no basis other than the record for knowing whether the state court correctly identified the governing legal principle or was extending the principle into a new context . . . [A]lthough [federal courts] cannot undertake [its] review by analyzing the basis for the state court's decision, [they] can view it through the 'objectively reasonable' lens ground by Williams . . . Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law. . .. Only by that examination may [federal courts] determine whether the state court's decision was objectively reasonable.

Id.

As for state court findings of fact, under Section 2254, subdivision (d)(2), a federal court may not grant a habeas petition by a state prisoner unless the adjudication of a claim on the merits by a state court resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). The "clearly erroneous" standard of unreasonableness that applies in determining the "unreasonable application" of federal law under Section 2254, subdivision (d)(1) also applies in determining the "unreasonable determination of facts in light of the evidence" under Section 2254, subdivision (d)(2). See Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000). To grant relief under Section 2254, subdivision (d)(2), a federal court must be "left with a firm conviction that the determination made by the state court was wrong and that the one [petitioner] urges was correct." Id. at 1108.

**ISSUE**

Pham contends that because there was insufficient evidence to support the gang enhancement allegations, his conviction violates his due process rights under the Fourteenth Amendment. More specifically, Pham argues that the State failed to present sufficient evidence of two elements of the gang enhancement allegation that:

(1) Pham possessed the requisite specific intent under California Penal Code section 186.22, subdivision (b)(1); or

(2) V12 had as one of its primary activities one of the enumerated criminal acts under California Penal Code section 186.22, subdivision (e).

**DISCUSSION**

**I. Legal Standard**

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970); see e.g., Fiore v. White, 531 U.S. 225, 228-29 (2001) (due process violated where basic element of crime not proven because statute did not prohibit defendant's conduct); see Leavitt v. Vasquez, 875 F.2d 260, 261 (9th Cir. 1989) (state must prove every element of

crime beyond a reasonable doubt). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, see Jackson v. Virginia, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief. See id. at 324; see e.g., Wigglesworth v. Oregon, 49 F.3d 578, 582 (9th Cir. 1995) (writ granted where Oregon procedure of allowing lab reports regarding drug analyses to be admitted into evidence without authenticating testimony relieved state of its burden to prove beyond a reasonable doubt all elements of crime charged); Martineau v. Angelone, 25 F.3d 734, 739-43 (9th Cir. 1994) (writ granted where evidence found insufficient to convict defendants of child abuse based on delay in seeking medical care for child).

Under Jackson, a federal court reviewing a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " See id. (quoting Jackson, 443 U.S. at 319). The Jackson standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. Sarausad v. Porter, 479 F.3d 671, 678 (9th Cir. 2007). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. See Jackson, 443 U.S. at 324.

After AEDPA, a federal habeas court applies the standards of Jackson with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275 (quoting 28 U.S.C. § 2254(d)).

Title 28, section 2254, subdivision (d)(1) of the United States Code plainly applies to Jackson cases; that is, if the state court affirms a conviction under Jackson, the federal

court must decide whether the state court's application of Jackson was objectively unreasonable. Sarausad, 479 F.3d at 677-78. The Ninth Circuit has adopted guidelines for applying the "objective unreasonableness" test: (1) the focus of the inquiry is on the state court decision; (2) even with the deference due by statute to the state court's determinations, the federal habeas court must look to the "totality of the evidence" in evaluating the state court's decision; (3) the failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable; (4) the failure of a state court to give appropriate weight to all of the evidence may mean that its conclusion is objectively unreasonable; and (5) the absence of cases of conviction precisely parallel on their facts does not, by itself, establish objective unreasonableness. Id. at 678.

By contrast, Title 28, section 2254, subdivision (d)(2) of the United States Code is not readily applicable to Jackson cases because a court under Jackson makes no "determination of the facts" in the ordinary sense of resolving factual disputes. Sarausad, 479 F.3d at 678. Rather, the court views the evidence in the light most favorable to the prosecution without resolving any disputed factual questions. Id. The federal court's task is not to decide whether the state court unreasonably determined disputed facts; it is, rather, to decide whether the state court unreasonably applied the Jackson test. See id. at 683 (finding that while state court's characterization of certain testimony was objectively unreasonable, its conclusion that the Jackson standard was satisfied was not objectively unreasonable). Thus, a federal court evaluates a state court's resolution of a Jackson sufficiency of the evidence claim in all cases under section 2254, subdivision (d)(1), rather than subdivision (d)(2). Id. at 678.

**II.   There was Sufficient Evidence From Which a Rational Trier of Fact Could Reasonably Find Beyond a Reasonable Doubt that Pham Possessed the Requisite Specific Intent.**

Pham challenges the state appellate court's holding that there was substantial evidence to support the specific intent element of the gang enhancement.

United States District Court
For the Northern District of California

The California Street Terrorism Enforcement and Prevention Act ("STEP Act") provides that "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" shall be punished by an additional term of ten years if the felony is a violent felony. Cal. Penal Code §§ 186.22, (b)(1) & (b)(1)(C) (West 2007).

Relying primarily on Garcia v. Carey, 395 F.3d 1099 (9th Cir. 2005), Pham argues that there was insufficient evidence to lead a rational trier of fact to find that he committed the stabbings with the requisite specific intent. In Garcia, the jury found the gang-member defendant guilty of robbery and found true the gun and gang enhancement allegations. Id. at 1102. On review, the Ninth Circuit observed that while the gang expert witness testified to three other robberies committed by members of the defendant's gang within a few months prior to the defendant's robbery, the expert's testimony was "singularly silent on what criminal activity of the gang was furthered or intended to be furthered by the [defendant's] robbery." Id. at 1103. The court also noted that there was "nothing inherent in the robbery that would indicate that it further[ed] some other crime." Id. Finding that nothing in the record could support an inference that the defendant committed the robbery with the specific intent to facilitate other criminal conduct by his gang, the Ninth Circuit affirmed the federal district court's grant of habeas relief. Id. at 1100.

Here, in contrast to Garcia, the record does support a rational inference of a specific intent to promote, further, or assist in other criminal conduct by gang members. At trial, the gang expert testified that V12 was a criminal street gang and that the July 2000 stabbings had been committed for the benefit of and at the direction of V12. (R.T. Exh. 2, 383, 395.) The basis for his opinion was three-fold. First, Pham and Trinh were V12 gang members. Second, Pham and Trinh acted in a coordinated fashion during the attack. Third, the vicious attack by Pham and Trinh was prompted by Tina's minor insult. The gang expert testified that, in his view, only gang members would respond to a minor insult, such as being called "chickenshit," with a brutal and violent knife attack. This is because a minor

insult to a gang member in public threatens his or her gang's reputation. (R.T. Exh. 2, 395-96.) Record evidence demonstrated that unless the gang member responds to the insult with violence, the gang itself will look weak. (R.T. Exh. 2, 401.) A violent response sends a message to others that if someone challenges the gang or reports the gang to the police, he or she will be dealt with in a violent manner. (R.T. Exh. 2, 411-12.) This message not only instills a sense of fear in others, but also garners respect for the gang among other gangs and potential recruits. (R.T. Exh. 2, 401-03, 410.) The testifying gang expert asserted that if no gang members had been involved in this case, the response to Tina's minor insult would not have involved weapons. (R.T. Exh. 2, 395-96.) The gang expert also attested that the statements made to Trong and Tuan during the attack, to the effect of, "Are you tough?" were the type of statements that gang members would make during a fight. (R.T. Exh. 2, 372.)

The gang expert in this case, unlike the expert in Garcia, was not "singularly silent" on what criminal activity of V12 was furthered or intended to be furthered. 395 F.3d at 1103. As the gang expert explained, gangs have a keen interest in and need for establishing a reputation for being tough. (R.T. Exh. 2, 390.) Holding such a reputation grants a gang the power of intimidation over witnesses and other gangs. (R.T. 390, 399-400.) The stronger the reputation, the greater the power. If a gang has an established reputation for violence, witnesses will be hesitant to report a gang's criminal behavior and rival gangs will be hesitant to attack them. (R.T. Exh. 2, 390-91, 396, 399, 402.) Possessing this power, in turn, makes it easier for a gang to commit crimes for financial gain. (R.T. Exh. 2, 391.)

In reaching its decision in Garcia, the Ninth Circuit relied in part on the California Supreme Court's decision in People v. Gardeley, 14 Cal. 4th 605 (1996), which was also cited by Pham. In Gardeley, the expert testified that the assault at issue was a "classic" example of gang-related activity. Id. at 619. The expert further explained that "criminal street gangs rely on such violent assaults to frighten the residents of an area where the gang members sell drugs, thereby securing the gang's drug-dealing stronghold." Id. The

United States District Court
For the Northern District of California

Gardeley court held that such testimony permitted the jury to reasonably find that the attack was committed with the requisite specific intent. Id. at 620. While there was no comparable evidence in Garcia, 395 F.3d at 1104, there is comparable evidence in this case. Therefore, the gang expert's testimony in this case was sufficient to establish Pham's specific intent to promote, further, or assist in V12's criminal conduct under Gardeley.

Pham also relies on People v. Gamez to support his petition. 235 Cal. App. 3d 957 (4th Dist. 1991), disapproved on other grounds by Gardeley, 14 Cal. 4th at 624 n.10. However, because there was sufficient evidence that Pham committed the attempted murders with the specific intent of promoting, furthering, or assisting in V12's criminal conduct, the state appellate court's holding in this case was not inconsistent with Gamez. The defendant in Gamez argued that because California Penal Code section 186.22 was unconstitutionally vague and overbroad, it violated his First Amendment right of freedom of association. Gamez, 235 Cal. App. 3d at 970. The state appellate court in Gamez disagreed with the defendant's reading of the statute, explaining that:

> [O]ne is free to associate with whomever one wishes under the statute, so long as the primary purpose of associating one's self with the group is not to commit crime. It is not the association with individuals alone which section 186.22 addresses, but the association with others for the purpose of promoting, furthering or assisting them in the commission of crime.

Id. at 971.

Here, Pham is not subject to the gang enhancement merely for his membership to the V12 gang. Rather, he is subject to the gang enhancement because there is sufficient evidence that he committed the attempted murders with the requisite specific intent under California Penal Code section 186.22 and, as explained below, that one of V12's primary activities was the commission of crime.

For the foregoing reasons, the state appellate court's application of Jackson was objectively reasonable, as a rational trier of fact could reasonably find that Pham possessed the requisite specific intent.

**III. There was Sufficient Evidence From Which a Rational Trier of Fact Could Reasonably Find Beyond a Reasonable Doubt that the "Primary Activity" Element of the Gang Enhancement Allegation was Satisfied.**

Pham also challenges the state appellate court's holding that there was substantial evidence to support the "primary activity" element of the gang enhancement.

As defined by the California Street Terrorism Enforcement and Prevention Act ("STEP Act"):

> "[C]riminal street gang" means any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its *primary activities* the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25) . . . of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a *pattern of criminal activity*.

Cal. Penal Code § 186.22(f) (West 2007) (emphasis added).

Under California Penal Code section 186.22, subdivision (e),[3] a "pattern of criminal activity" means the commission of, attempted commission of, or conviction of two or more of the offenses enumerated in paragraphs (1) to (25) of subdivision (e). Cal. Penal Code §186.22(e). Paragraphs (1) to (25) of subdivision (e) include "[a]ssault with a deadly weapon or by means of force likely to produce great bodily injury, as defined in Section 245," Cal. Penal Code § 186.22(e)(1), "[u]nlawful homicide or manslaughter, as defined in Chapter 1 (commencing with Section 187) of Title 8 of Part 1, Cal. Penal Code. § 186.22(e)(3), and the "intimidation of witnesses and victims, as defined in Section 136.1." Cal. Penal Code § 186.22(e)(8). To amount to a "pattern of criminal activity," these offenses must be committed on separate occasions, or by two or more persons. Cal. Penal Code §186.22(e).

At trial, the gang expert testified that he believed that V12 was a "criminal street gang" and had committed criminal acts, prior to the July 2000 stabbing, that established a "pattern of criminal gang activity" for the purposes of the STEP Act. (R.T. Exh. 2, 383.) In support of his opinion, the gang expert identified two prior violent altercations that involved

[4] Unless otherwise specified, all further undesignated statutory references are to the California Penal Code.

V12 gang members. In the first violent altercation, which occurred on May 10, 2000, V12 member Dat struck a person over the head with a glass at a Vietnamese café. A fight subsequently broke out in which both victims were stabbed. Dat admitted to being a member of V12, was later convicted of attempted murder, and admitted the truth of the gang enhancement allegation. In the second violent altercation, registered V12 member Phat committed an assault with a deadly weapon at a Vietnamese café.

Contrary to Pham's contentions, this evidence was sufficient to lead a rational trier of fact to find that V12 had as one of its primary activities one of the statutorily enumerated criminal offenses. "Evidence of past or present conduct by gang members involving the commission of one or more of the statutorily enumerated crimes is relevant in determining the group's primary activities." People v. Sengpadychith, 26 Cal. 4th 316, 323 (2001). Such evidence alone, however, is not necessarily sufficient. Id. For instance, evidence of one offense or occasional criminal activity is insufficient to establish that such activity is a primary activity under the STEP Act. People v. Vy, 122 Cal. App. 4th 1209, 1223 (2004). However, evidence of consistent and repeated statutorily enumerated criminal activity may be sufficient evidence of a gang's primary activities. Sengpadychith, 26 Cal. 4th at 324. While expert testimony expressly identifying a gang's primary activities may be sufficient evidence, see Vy, 122 Cal. App. 4th at 1225-26, the California Supreme Court has made clear that this type of evidence is not required. Sengpadychith, 26 Cal. 4th at 324.

Here, there are strong factual similarities between Pham's attempted murder and the predicate criminal acts. Both Pham and Dat's attempted murders involved the use of knives, and resulted in their victims being stabbed. More generally, all three criminal acts involved violent conduct, the use of weapons, were committed at Vietnamese cafés, and are statutorily enumerated offenses under Section 186.22, subdivision (e). As the gang expert testified, such criminal acts can serve to establish and reinforce a gang's reputation for being tough and, in turn, intimidate both witnesses and potential attackers. Taken together, the similarities between Pham's attempted murder and the predicate criminal acts demonstrate consistency in V12's activity. Moreover, the number of offenses committed in

United States District Court
For the Northern District of California

temporal proximity demonstrates the repetitive nature of V12's criminal conduct. Therefore, under Sengpadychith, the gang expert's testimony in this case was sufficient to support the finding that V12 had as one if its primary activities one of the statutorily enumerated offenses in Section 186.22, subdivision (e).

For the foregoing reasons, the state appellate court's application of Jackson was objectively reasonable, as a rational trier of fact could reasonably find that the "primary activity" element of the gang enhancement allegation was satisfied.

**CONCLUSION**

Applying California law, the state appellate court correctly held that there was sufficient evidence to support a true finding for the gang enhancement to Pham's conviction. This holding was not unreasonable nor was it an unreasonable application of clearly established federal law. Because there was sufficient evidence from which a rational trier of fact could reasonably find that Pham committed the attempted murders with the specific intent to promote, further, or assist in criminal conduct by V12, and that the "primary activity" element of the gang enhancement allegation was satisfied, Pham's due process rights under the Fourteenth Amendment have not been violated. Therefore, for the reasons set forth above, Pham's petition for writ of habeas corpus is DENIED.

This order fully adjudicates the petition listed at No. 1 of the clerk's docket for this case and terminates all other pending motions. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 6, 2007

PHYLLIS J. HAMILTON
United States District Judge